**In re Nickolas C. BALLAS, Debtor.**

**No. 3:04–BK–11218–GLP.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 11, 2005.

Nickolas C. Ballas, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the Motion to Extend Time to File a Complaint Objecting to Discharge and/or Dischargeability filed by Creditors, Jonathan D. Legg and Diane P. Legg (collectively, the "Leggs"). The Court held hearings on April 6, May 11, and June 21, 2005. Based upon the evidence presented and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. The Leggs are creditors of Nickolas C. Ballas ("Ballas") by virtue of an obligation that arose in connection with the sale of stock to Ballas and his former business partner, Dennis A. Brammeier ("Brammeier") in September, 2001. Pursuant to this arrangement, Ballas, along with Brammeier, acquired an ownership interest in Delray Stake and Shavings, Inc. ("DSS") in exchange for a promissory note. In July 2003, Ballas defaulted on his payment obligation under the note.

2. On September 17, 2003, DSS's assets were sold to Space Coast Truss, Inc. ("SCT"). On January 26, 2004, Brammeier (the Debtor's former business partner) filed a Chapter 7 petition in the United States Bankruptcy Court for the Southern District of Florida, Palm Beach Division.

3. The Leggs, through their attorney, Arthur Neiwirth, engaged in discovery in the Brammeier bankruptcy case. Specifically, on May 10, 2004, the Leggs filed a Motion to Compel Production of Documents, seeking to obtain, among other things, records regarding DSS and the sale of DSS's assets. On July 1, 2004, the court for the

Southern District of Florida found that Brammeier was incapable of producing the records that Neiwirth sought because the materials were controlled by Nickolas Ballas. Additionally, on September 29, 2004, Neiwirth (the Leggs' attorney) served Ballas and his attorney, Lawrence Marchbanks, with subpoenas duces tecum to be deposed in the Brammeier bankruptcy case.

4. On November 4, 2004, Ballas filed a Chapter 7 petition commencing this case. The Leggs were listed as creditors in Schedule F.

5. Neiwirth first learned of Ballas' bankruptcy on December 8, 2004 through correspondence from Marchbanks, which indicated that Ballas would be unable to attend the deposition in the Brammeier bankruptcy case scheduled for December 9.

6. On December 9, 2004, Ballas' Section 341 meeting of creditors was conducted. Niether the Leggs nor their attorney was present.

7. On December 21, 2004, pursuant to the discovery request in the Brammeier bankruptcy case, Neiwirth received the documents regarding the transactions of DSS and the sale of DSS's assets to SCT.

8. On December 30, 2004, the Leggs, in the present case, filed a Motion for Enlargement of Time to File Objections to Claimed Exemptions. On January 31, 2005, the Court entered an Order granting the Leggs' motion.

9. On February 1, 2005, the Leggs, in the present case, filed a Motion to Extend Time to File a Complaint Objecting to Discharge and/or Dischargeability. The deadline to file a complaint objecting to the Debtor's discharge or to determine dischargeability of a particular debt was February 7, 2005.

10. During the first week of February, the Debtor's deposition in the Brammeier case was conducted, as well as Brammeier's 2004 examination.

11. On March 19, 2005, the Leggs, in the present case, filed a Motion for 2004 Examination of the Debtor. The Court has held that motion in abeyance pending its decision on the instant motion.

### CONCLUSIONS OF LAW

Bankruptcy Rule 4004 sets forth the applicable standard for deadlines with respect to objections to discharge and dischargeability. *Fed. R. Bankr.P. 4004.* Bankruptcy Rule 4004(a) provides that in a Chapter 7 liquidation case a complaint objecting to a debtor's discharge under § 727 shall be filed no later than sixty days after the first date set for the Section 341 meeting of creditors. *Id.* Similarly, Bankruptcy Rule 4007 sets forth the procedure to obtain a determination of dischargeability of a particular debt under § 523. *Fed. R. Bankr.P. 4007.* Bankruptcy Rule 4007(c) provides an identical deadline as Bankruptcy Rule 4004(a) for filing a complaint to dischargeability under § 523. *Id.* In the present case, the Debtor's 341 meeting of creditors was conducted on December 9, 2004. Thus, the deadline to file a complaint objecting to the Debtor's discharge and/or dischargeability was February 7, 2005.

Bankruptcy Rule 4004(b) provides that "[o]n motion of any party in interest, after hearing on notice, the court may *for cause* extend the time to file a complaint objecting to discharge. The motion shall be filed before the time has expired." *Fed. R. Bankr.P. 4004* (emphasis added). Likewise, Bankruptcy Rule 4007(c) indicates that "[o]n motion of any party in interest, after hearing on notice, the court may *for cause* extend the time fixed under this subdivision. The motion shall be filed be-

fore the time has expired." *Fed. R. Bankr.P. 4007* (emphasis added). On February 1, 2005, the Leggs filed a Motion for Enlargement of Time to File a Complaint Pursuant to 11 U.S.C. § 523 and/or 727. As indicated above, the deadline to file a complaint objecting to the Debtor's discharge and/or dischargeability was February 7, 2005. Thus, the motion was timely made. The issue before the Court is whether the Leggs showed sufficient cause such that the Court should extend the time to file a complaint objecting to discharge and/or dischargeability.

■ "Cause" is not defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure; therefore, the determination is committed to the Court's discretion. *In re Stonham,* 317 B.R. 544, 547 (Bankr.D.Colo.2004); *In re Farhid,* 171 B.R. 94 (N.D.Cal.1994). Courts have addressed factors helpful in the determination of cause: (1) whether the debtor refused in bad faith to cooperate with the creditor; (2) whether the creditor had sufficient notice of the deadline and the information to file an objection; (3) the possibility that the proceedings pending in another forum will result in collateral estoppel on the relevant issues; (4) whether the creditor exercised diligence; and (5) the complexity of the case. *See In re Benedict,* 90 F.3d 50, 55 (2nd Cir.1996); *In re Weinstein,* 234 B.R. 862, 866 (Bankr.E.D.N.Y.1999); *In re Mendelsohn,* 202 B.R. 831, 832 (Bankr.S.D.N.Y.1996); *Santana Olmo v. Quinones Rivera,* 184 B.R. 178, 183 (D.P.R.1995). Whether the creditor exercised diligence with respect to discovery is of most importance, as many courts now require the creditor to establish at least a reasonable degree of due diligence to be accorded the requested extension. *See, e.g., In re Nowinski,* 291 B.R. 302, 306 (Bankr.S.D.N.Y.2003);

*In re Desiderio,* 209 B.R. 342, 345 (Bankr. E.D.Pa.1997).

■ In applying the aforementioned factors to the present case, the Leggs first argue that the Debtor failed to cooperate with their discovery efforts in his case as well as the Brammeier case, and as a result of such protraction, the Leggs should be entitled to an extension of time to file a complaint objecting to discharge and/or dischargeability. The Court finds this argument unpersuasive. First, prior to the Motion for a Rule 2004 Examination of the Debtor on March 19, 2005, the Leggs did not initiate any discovery in the instant case. Thus, in the Debtor's case, there was no discovery to delay. With respect to the Brammeier bankruptcy, the Leggs offered insufficient evidence to establish that the Debtor protracted their discovery efforts in bad faith. Further, assuming *arguendo* that the Debtor did in fact delay the Leggs' discovery in the Brammeier bankruptcy, the Debtor's failure to be forthcoming in the Brammeier case does not establish cause to extend the time to object to discharge and/or dischargeability in the present case, given the fact that no discovery in the present case had been initiated prior to the Motion to Extend.

■ The Leggs also argue that the Debtor's unaccommodating conduct, specifically the failure to notice Neiwirth of his bankruptcy filing, impeded their ability to expeditiously engage in discovery. According to Bankruptcy Rule 2002, a debtor is only required to notice the creditors to whom he or she is indebted. *Fed. R. Bankr.P.2002.* In the present case, the Debtor properly listed the Leggs in Schedule F. The Debtor was under no obligation to notice Neiwirth, an attorney for a creditor in another bankruptcy. Therefore, the Court finds this argument is without merit.

■ Further, the Leggs contend that the complexities of the case, specifically the process of unraveling and unwinding the financial transactions of the Debtor, Brammeier and DSS, the subject of which forms the basis of their potential complaints, warrant an extension of time. The Court acknowledges the interrelationship of the Debtor's case and the Brammeier case, as well as the numerous issues involved. However, the entanglement of the parties and the intricacy of the issues do not camouflage the Leggs' neglect to pursue discovery in the instant case. Given the complexity involved, if the Leggs had engaged in a minimal amount of discovery antecedent to the Motion to Extend, an extension of time may have been appropriate.

■ Lastly, the Leggs argue that their discovery efforts in the Brammeier bankruptcy sufficiently establish cause to extend the deadline to object to discharge and/or dischargeability in the present case. A creditor's lack of diligence can be fatal to its request at the eleventh hour to obtain an extension of time to file an objection to discharge and/or dischargeability. *In re Denike*, 322 B.R. 452 (Bkrtcy. M.D.Fla.2005). The key fact in the *Denike* decision, and the presence thereof in the case law upon which it relies, is the marked absence of any meaningful discovery by the creditor prior to seeking an extension of the deadline. In each instance, the creditor requesting an extension effectively sat on its rights only engaging in discovery shortly prior to the deadline.

The Leggs argue that the quantum of discovery in the Brammeier bankruptcy illustrates sufficient diligence to satisfy the cause requirement to extend the deadline to object to discharge and/or dischargeability in the present case; moreover, if the Court were to ignore their discovery efforts in the Brammeier case, the effect would be to elevate form over substance and essentially vitiate the Court's discretion in determining what constitutes cause. The Court disagrees with this argument.

Although the Leggs sought discovery in the Brammeier bankruptcy, they did not initiate any discovery in the present case until March 19, 2005, six weeks after the request for an extension of the deadline. Moreover, Neiwirth (the Leggs' attorney) first learned of the Debtor's bankruptcy on December 8, 2004. Thus, any discovery in the Brammeier bankruptcy prior to December 8, 2004 could not have been conducted with the motive of obtaining information about the dischargeability and/or discharge of Mr. Ballas (the Debtor) because Neiwirth had not yet learned of the Debtor's bankruptcy filing. The Leggs should not be able to circumvent the requirement of utilizing the appropriate methods of discovery in the Debtor's bankruptcy because of the ancillary benefit of having obtained information about the Debtor from discovery in a related bankruptcy case. Allowing the Leggs to substitute their discovery efforts in the Brammeier case for due diligence in the present case would render the appropriate means of discovery inefficacious.

The balance of the factors weighs overwhelmingly in favor of the Debtor. Based upon the foregoing, the Leggs insufficiently demonstrated cause, under Rule 4004(b) and 4007(c), to extend the time to file an objection to discharge and/or dischargeability. A separate order will be entered consistent with these Findings of Facts and Conclusions of Law.