**In re David Hugh STONHAM, Debtor.**

**No. 04–20452 MER.**

United States Bankruptcy Court,
D. Colorado.

Nov. 29, 2004.

J. Matthew DePetro, Greenwood Village, CO, Counsel for Debtor.

Patrick D. Frye, Theodore J. Hartl, Linquist & Vennum, P.L.L.P., Denver, CO, Counsel for Central Bank and Trust.

## ORDER

MICHAEL E. ROMERO, Bankruptcy Judge.

The matter before this Court is a motion filed by Central Bank & Trust ("CBT") requesting an extension of time to file a complaint to determine the dischargeability of a debt. For the reasons that follow, the motion for an extension is GRANTED.

## BACKGROUND

David Hugh Stonham ("Stonham"), the Debtor herein, filed his Chapter 7 petition on May 14, 2004 (the "Petition Date"). Prior to the bankruptcy, CBT initiated an action against Stonham in the District Court of Fremont County, Wyoming, arising from the breach of a promissory note (the "Wyoming Suit"). In the Wyoming Suit, CBT alleged not only a breach of the relevant promissory note, but also fraud and fraud in the inducement, and sought both compensatory and punitive damages. Due to its inability to personally serve Stonham with a copy of its complaint, CBT accomplished service on Stonham via publication pursuant to the Wyoming Rules of Civil Procedure. On May 27, 2003, after Stonham failed to file an answer, a Judgment and Order was entered in the Wyoming Suit awarding damages to CBT and against Stonham in the amount of $72,346.67 (the "Wyoming Judgment").

On the Petition Date, the Court issued its Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines (the "Notice"). The Notice set the Debtor's 341 meeting of creditors on June 21, 2004 and also set a deadline for creditors to file complaints to determine dischargeability or deny discharge on August 20, 2004. On August 17, 2004, CBT filed its motion seeking an extension to file such a complaint requesting an additional period of approximately 21 days (the "Extension Motion"). Pursuant to CBT's pleadings, the extension was necessary to allow CBT "to complete its investigation of the Debtor's current location" and "to further investigate issues as to the potential preclusive effect of the Wyoming default judgment and whether further litigation was in the client's best economic interest." *Extension Motion* ¶ 4. Stonham opposed the Extension Motion, arguing, in part, that CBT had not demonstrated that it had exercised sufficient due diligence prior to the deadline date to warrant the granting of the requested relief.

## DISCUSSION

A discharge is the most important element of any debtor's fresh start. H.R.Rep. No. 95–595, at 128 (1977), U.S.Code Cong. & Admin. News, 1978 pp. 5963, 6089; *See Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). As a result, debtors have a strong interest in the prompt resolution of discharge issues. *In re Davis,* 195 B.R. 422, 424 (Bankr.W.D.Mo.1996).

▇ The standards for adjudicating a creditor's request for an extension of time to file a complaint objecting to the dis-

chargeability of a particular debt are not clearly established in the applicable rules of bankruptcy procedure. Fed.R.Bankr.P. 4007(c) provides only that the time deadline for the filing of a § 523 complaint may be extended "for cause." The only other requirement is that "[t]he motion shall be made before the time is expired." "Cause" is not defined and the determination is committed to the Court's discretion. *In re Farhid,* 171 B.R. 94, 96 (N.D.Cal. 1994).

■ In this district, the only published opinion directly addressing the issue is nearly twenty years old. *See In re Knobel,* 54 B.R. 458 (Bankr.D.Colo.1985). In that case, Judge Clark stated:

> The Court in *In re Kellogg,* 41 B.R. 836 (Bankr.W.D.Okla.1984) ruled that an "extension should be granted liberally absent a clear showing of bad faith." 41 B.R. 838. Other courts still use two of the factors considered under the excusable neglect standards: (1) whether granting the delay will prejudice the debtor, and (2) the length of the delay and its impact on efficient court administration. *In re Sturgis,* 46 B.R. 360 (Bankr.W.D.Okla.1985). *In re Magouirk,* 693 F.2d 948 (9th Cir.1982).

*Knobel,* 54 B.R. at 461. Stonham suggests that the *Knobel* case no longer reflects the majority position on the issue. Many courts now require the creditor to establish at least a reasonable degree of due diligence to be accorded the requested extension. *See, e.g., In re Nowinski,* 291 B.R. 302, 306 (Bankr.S.D.N.Y.2003); *In re Desiderio,* 209 B.R. 342, 345 (Bankr. E.D.Pa.1997). This Court agrees.

■ As Stonham convincingly argues, the suggestion in *Knobel* that extensions should be "granted liberally absent a clear showing of bad faith" switches the burden of proof under Fed.R.Bankr.P. 4007 to the Debtor. It is a basic rule of statutory construction that a statute must be interpreted to mean what it says. *DeMassa v. MacIntyre, (In re MacIntyre),* 74 F.3d 186, 189 (9th Cir.1996). This Court believes this concept must also apply when interpreting the bankruptcy rules. *See Taylor v. Freeland & Kronz,* 503 U.S. 638, 644 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (statutes and rules mean what they say even though they may lead to unwelcome results). Thus, if Fed.R.Bankr.P. 4007 states that "cause" must be demonstrated, then the Court does not agree that the movant's burden of proof can be satisfied with only a scintilla of evidence.

Likewise, the reference in *Knobel* to *In re Sturgis, supra,* and *In re Magouirk, supra,* is of questionable applicability. Those cases based their holdings on factors used by the Court in applying the "excusable neglect" standard under Fed. R.Bankr.P. 9006. However, Fed. R.Bankr.P. 4007, enacted specifically to apply to dischargeability complaints, does not include "excusable neglect" as a basis for granting the enlargement of that deadline. Therefore, application of that standard is improper. *See In re Grillo,* 212 B.R. 744, 746 (Bankr.E.D.N.Y.1997).

■ So what actions demonstrate sufficient "cause" to satisfy the more restrictive standard enunciated by *Desiderio, supra, et. al?* Numerous courts have identified factors which may be considered.[1] However, the determination of

---

1. Some of the enunciated factors include: (1) whether the Debtor refused in bad faith to cooperate with the creditor, *See In re Benedict,* 90 F.3d 50, 55 (2nd Cir.1996); (2) whether the creditor had sufficient notice of the deadline and the information to file an objection, *See Santana Olmo v. Quinones Rivera* 184 B.R. 178, 183 (D.P.R.1995); (3) the possibility that the proceedings pending in another forum will result in collateral estop-

"cause" by its very nature is fact driven and thus, must be analyzed on a case by case basis.

■■■ In the present case, Stonham alleges the extension request must be denied because CBT did not exercise sufficient due diligence to warrant the requested relief. Specifically, Stonham argues that CBT waited until the last minute to file the extension request while not participating in the Debtor's § 341 meeting of creditors or conducting a Fed.R.Bankr.P.2004 examination. *See Debtor's Supplemental Response to Motion Pursuant to Fed. R.Bankr.P.4007(c) to Extend Time for Filing Complaint,* at pp. 3–4.[2]

The only witness testifying at the hearing on the Extension Motion was Thomas A. Fosse, Esq., an attorney from Riverton, Wyoming, who represented CBT in the Wyoming Suit. Fosse admits that his experience in bankruptcy related matters is limited. He has not filed a Chapter 11 nor a Chapter 13 case for any clients, and his last Chapter 7 work occurred at least seven years ago. Fosse indicated when he filed the initial complaint in the Wyoming Suit, he did not give any consideration to bankruptcy issues. However, prior to drafting the motion for default judgment, he did research § 523 and attempted to draft the proposed findings of fact to match the standards necessary for application of that statutory provision in the case of a Stonham bankruptcy filing.

Fosse did not recall the exact date when he learned of the filing of the Stonham bankruptcy case, but believed it was in June of 2004. After being advised of the filing, he undertook an effort to find Colorado counsel to assist him in the representation of CBT's interest. After approximately one month of searching, on or about July 21, 2004, present local counsel was retained. Immediately thereafter, Fosse and his newly hired local counsel exchanged drafts of an engagement letter and a file containing the pleadings of the Wyoming Suit. Local counsel then began researching the legal applicability of the res judicata/collateral estoppel effect of the judgment in the Wyoming Suit, and more specifically whether the method of service (publication) adversely affected the application of these doctrines. Local counsel also commenced research on the standards necessary for proving fraud for dischargeability purposes. During this same period, Fosse personally contacted several individuals who had knowledge of the facts surrounding the condition of the real property

pel on the relevant issues. *See In re Weinstein,* 234 B.R. 862, 866 (Bankr.E.D.N.Y. 1999); (4) whether the creditor exercised diligence, *See In re Farhid,* 171 B.R. at 97; *In re Grillo,* 212 B.R. at 747; *In re Mendelsohn,* 202 B.R. 831, 832 (Bankr.S.D.N.Y.1996); and (5) the complexity of the case, *See In re Leary,* 185 B.R. 405, 406 (Bankr.D.Mass.1995).

2. Several cases, some of which were cited by Stonham, support this proposition. *See, e.g., In re Farhid,* 171 B.R. 94, 97 (N.D.Cal.1994) (cause absent where creditor failed to attend section 341 meeting of creditors or request any Rule 2004 examination); *In re Woods,* 260 B.R. 41, 45 (Bankr.N.D.Fla.2001) (cause not shown where creditor did not attend § 341 meeting of creditors and did not seek discovery). *In re Mendelsohn,* 202 B.R. 831,

832 (Bankr.S.D.N.Y.1996) (no cause where creditor failed to seek a Rule 2004 examination and moved for an extension of time on last day to file objections to discharge); *In re Leary,* 185 B.R. 405, 406 (Bankr.D.Mass. 1995) (cause absent where creditor waited until ten (10) days prior to expiration of the deadline to pursue requested Rule 2004 examinations); *In re Dekelata,* 149 B.R. 115, 117 (Bankr.E.D.Mich.1993) (no cause where request for Rule 2004 examination was made for the first time 11 days prior to expiration of the deadline); *Littell v. Littell (In re Littell),* 58 B.R. 937, 938 (Bankr.S.D.Tex.1986) (no cause where creditor failed to conduct discovery and motion for extension of time was filed day before deadline was to expire).

which was the subject of the foreclosure claim in the Wyoming Suit to determine whether additional grounds existed to challenge dischargeability. Finally, Fosse contacted representatives of CBT to discuss the economics of pursuing a dischargeability action, particularly because of concerns regarding the Defendant/Debtor's whereabouts.

It is apparent from this uncontroverted testimony that CBT did not "sit on its hands" in the time between the filing of the bankruptcy case and the date the Extension Motion was filed. Diligent efforts were made by CBT's representative to find Colorado counsel with bankruptcy experience to assist CBT in this action. Once local counsel was retained, research was commenced into the legal basis for potential claims, and CBT's Wyoming counsel contacted potential fact witnesses, as well as engaged in conversations with the client to determine the desirability of bankruptcy litigation.

Additionally, the Court has not found, nor has any party identified any legal authority which indicates that a creditor need to conduct *all* relevant discovery necessary to establish its case prior to the filing of a complaint to satisfy the due diligence standard. Since the dischargeability complaint is based on facts developed in the pre-bankruptcy relationship between the parties, non-attendance at a § 341 meeting of creditors or the decision not to conduct a Rule 2004 exam are not fatal to CBT's Motion.

Thus, this Court concludes that CBT has acted diligently, and in so doing, satisfied its burden to establish cause for the requested extension. For the foregoing reasons,

IT IS ORDERED CBT's motion for extension of time is hereby GRANTED.

IT IS FURTHER ORDERED CBT shall file a Complaint within fifteen days of the entry of this Order.